IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LEONARD A. THOMAS,**

      **Plaintiff,**

v.                                                  Case No. 3:10cv171/MCR/EMT

**WENDALL HALL, in his official
capacity as SHERIFF OF SANTA
ROSA COUNTY, FLORIDA,**

      **Defendant.**
_____/

## ORDER

The plaintiff, Leonard Thomas, filed this lawsuit against Wendall Hall, in his official capacity as Sheriff of Santa Rosa County, Florida ("Sheriff"), asserting claims for failure to promote in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-2, *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01, *et seq*. (doc. 1). Pending before the court is the Sheriff's motion for summary judgment (doc. 24), to which the plaintiff has responded in opposition (docs. 31, 32). Having considered the Sheriff's motion and the plaintiff's response, the court finds there is no genuine issue of material fact and the Sheriff is entitled to summary judgment as a matter of law.

**BACKGROUND**

The plaintiff, who is a black male, has been employed by the Santa Rosa County Sheriff's Office ("SRCSO") for approximately 27 years. The plaintiff claims that, during that time, he twice has been denied promotions because of his race. Specifically, the plaintiff claims that he applied for and was denied a promotion to lieutenant in the patrol division

in 2008[1] and applied for and was denied a promotion to lieutenant in the major crimes section of the investigative division in 2009.[2]  Under the SRCSO promotional policy in effect at the time the plaintiff applied for the promotions, the Sheriff was responsible for identifying promotional needs.[3]  Once the Sheriff identified a promotional need, the human resources section was to prepare and post a roster identifying the deputies who met the eligibility requirements for the position so that deputies could verify the accuracy of their eligibility and report any discrepancies.[4]  Once the eligibility list was compiled and posted, the vacancy was announced.  The human resources section would then rank candidates based on total composite scores derived from several factors, including training courses, formal education, experience as a field training officer, supervisory experience, a written examination, responses to written scenario-based questions, and seniority, and prepare a final promotional roster based on the rankings.  The final promotional roster was to remain in effect for twenty-four months after it was posted and, as promotions occurred, candidates would move up the list and be added to the active promotional roster, which consisted of the five highest ranking candidates.  Each time a position became available, the Sheriff was provided with the names appearing on the active promotional roster and the selection committee, which consisted of the department major and division captains, would meet and discuss each candidates' qualification for the vacancy to be filed.  The

---

[1] The individual promoted to lieutenant in the patrol division was to be assigned to a watch commander's position, supervising law enforcement operations throughout the county during the evening hours.

[2] The major crimes lieutenant also served in a supervisory capacity and oversaw the detective unit, crimes against children unit, crime analysis unit, narcotics unit, crime scene unit, and evidence unit.

[3] The policy is set forth in Promotional Procedures General Order D-017.

[4] At the time of the events in question, there were two divisions in the Sheriff's department – law enforcement and detention.  It appears that, within the law enforcement division, the were at least two positions to which one could be promoted – sergeant and lieutenant.  Promotional rosters were based on available positions rather than the actual vacancies to be filled.

selection committee would then recommend one of the five for promotion.[5] Although the Sheriff was authorized to select for promotion any one of the five highest ranking candidates, it was his practice to follow the recommendation of the department major and division captains. At the time the plaintiff applied for the promotion to lieutenant in the patrol division, he ranked third on the active promotional roster. The top ranking candidate, Sergeant Doug Laws ("Laws"), a white male, was promoted. The plaintiff ranked second when he applied for promotion to lieutenant in the major crimes section of the investigative division. The third highest ranking candidate, Sergeant Joe McCurdy ("McCurdy"), who also is a white male, was chosen for that position. The plaintiff claims that he was denied both promotions because of his race.

On September 15, 2009, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on the Sheriff's failure to promote him to the position in the investigative division. The plaintiff amended his charge on November 16, 2009, to include the position in the patrol division. According to the plaintiff's complaint, the EEOC issued its determination and notice of rights to sue on February 24, 2010.[6] This lawsuit ensued. The Sheriff has filed a motion for summary judgment, arguing that he is entitled to summary judgment as a matter of law with respect to the plaintiff's claim based on the position in the patrol division because the plaintiff did not timely file a charge of discrimination. The Sheriff argues that he is entitled to summary judgment on the plaintiff's claim based on the position in the investigative division because the plaintiff has failed to show that the Sheriff's reasons for promoting McCurdy were pretexts for race discrimination. The court agrees with the Sheriff on both grounds.

---

[5] At least with regard to the promotions at issue in this case, the division captain consulted the candidates' supervisors to obtain input on the candidates' qualifications for the positions prior to making recommendations.

[6] There is no copy of the EEOC's determination in the record.

Case No.3:10cv171/MCR/EMT

## DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

B. <u>Plaintiff's Failure to Promote Claims</u>

    1. Timeliness

In order to maintain a Title VII claim, a plaintiff must first timely file a charge of discrimination with the EEOC. *See Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). Ordinarily, the charge must be filed within 180 days after the

alleged unlawful employment practice. *Id.*; *see* 42 U.S.C. § 2000e-5(e)(1). The period for filing a charge with the EEOC may be extended to 300 days in deferral states, however, if the plaintiff first files a timely charge of discrimination with a state or local agency.[7] *Id.* Although Florida is a deferral state and the Sheriff does not dispute that the plaintiff's charge was dual-filed, the plaintiff's charge nevertheless was untimely with regard to the patrol division position. Indeed, although the plaintiff was denied the promotion on December 19, 2008, he did not amend his EEOC charge to include the denial of that promotion until November 16, 2009, which was more than 300 days after the alleged unlawful employment practice occurred.[8] As a result, the plaintiff's claim based on the patrol division position is untimely under both Title VII and the FCRA and must be dismissed.[9]

---

[7] As the Eleventh Circuit has explained,

> [d]eferral states are those that prohibit the unlawful employment practice at issue and have established state or local authorities to grant or seek relief for such practice. In deferral states, no charge may be filed [with the EEOC] . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated. . . . This gives the deferral state agencies notice of the alleged discrimination and an opportunity to investigate the allegations before the federal agency gets involved. Thus, in deferral states, either a complainant must file with the state agency by the 240th day after the discriminatory act, or the state agency must terminate proceedings by the 300th day on a charge filed after the 240th day.
>
> Deferral states may also enter into worksharing agreements with the EEOC, whereby the deferral states waive the right to investigate a charge during the sixty-day deferral period. The deferral state's waiver of the opportunity to investigate during the sixty-day deferral period may constitute a termination of the state's proceedings, thereby making a charge filed after the 240th day timely by virtue of the deferral state's termination of its proceedings before the 300th day.

*Maynard*, 256 F.3d at 1262 (internal marks and citations omitted).

[8] Discrete discriminatory acts, such as a failure to promote, "'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Smithers v. Wynne*, 319 Fed. Appx. 755, 756-57 (11th Cir. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "The clock for the charging period starts when the discrete unlawful practice takes place." *Id.* at 757.

[9] Curiously, the plaintiff did not address the timeliness issue in his response to the Sheriff's motion.

Case No.3:10cv171/MCR/EMT

2.     2009 Promotion

Because the plaintiff failed to timely exhaust his administrative remedies with respect to the patrol division position, the court need consider only his claim that he was discriminated against with regard to the promotion to lieutenant in the investigative division. Both Title VII and the FCRA prohibit an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race.  *See* 42 U.S.C. § 2000e-2(a)(1), Fla. Stat. § 760.10(1)(a), (7).[10]  In this case, the plaintiff relies solely on circumstantial evidence in support of his claim; as a result, the court must apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  "The first step of the *McDonnell Douglas* framework requires the plaintiff to make out a case sufficient to withstand a motion for summary judgment (or a motion for judgment as a matter of law) – i.e., a 'prima facie case.'"  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011).  In order to do so, a plaintiff claiming that he was denied a promotion based on his race must establish the following four elements: (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other employees who are equally or less qualified, but were not members of the protected class, were promoted.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2006).  If the plaintiff establishes a *prima facie* case of discrimination, a rebuttable presumption arises that the employer unlawfully discriminated against him and the burden shifts to the employer to produce evidence of a "legitimate, nondiscriminatory" reason for the employment decision.  *Smith*, 644 F.3d at 1325.  "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie

---

[10] The FCRA is patterned after Title VII; thus, Title VII case law is applicable to claims brought under the FCRA and the court need not analyze the claims separately.  *See Smith v. Naples Commun. Hosp., Inc.*, No. 10-12460, 2011 WL 2652178, at *2 (11th Cir. July 7, 2011).

Case No.3:10cv171/MCR/EMT

case is rebutted and thus disappears."[11]  *Smith*, 644 F.3d at 1325-26.  "Once the presumption of discrimination is rebutted, the inquiry proceeds to a new level of specificity, whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination." *Id.* at 1326 (internal marks omitted).  "It is at this stage that the plaintiff's burden . . . merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.* (internal marks omitted).  A plaintiff asserting a failure-to-promote claim

> cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. [As the Eleventh Circuit has] explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.

*Brooks*, 446 F.3d at 1163 (internal marks omitted).  Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions in [the employer's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence."  *Porter v. Am. Cast Iron Pipe Co.*, No. 10-14017, 2011 WL 1990667, at *1 (11th Cir. May 23, 2011) (internal marks omitted).

The Sheriff concedes that the plaintiff has established a *prima facie* case of failure to promote with respect to the position in the investigative division.  The Sheriff argues, however, that he had a legitimate, nondiscriminatory reason for promoting McCurdy rather than the plaintiff.  Specifically, the Sheriff contends that he followed the recommendation of the department major and division captains and promoted McCurdy because McCurdy

---

[11] A trier of fact does not have to believe the employer's proffered reason in order to find that the employer has met its burden, "[f]or the burden-of-production discrimination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Nor is an employer required to persuade the court its reason is "legitimate." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). The employer is required only to present evidence which, taken as true, permits a reasonable fact finder to conclude there was a legitimate nondiscriminatory reason for the employment action. *St. Mary's Honor Ctr.*, 509 U.S. at 509; *Cooper*, 390 F.3d at 725.

Case No.3:10cv171/MCR/EMT

was considerably more qualified than all of the other candidates, including the plaintiff, largely because of his supervisory experience in the investigative division.[12]  Because the Sheriff has proffered a legitimate, nondiscriminatory reason for the promotion decision, the burden shifts back to the plaintiff to show that the true motive underlying the Sheriff's decision was discriminatory.  In an effort to do so, the plaintiff argues that he was more qualified than McCurdy because he had a higher composite score and thus ranked higher than McCurdy on the eligibility list.  The plaintiff has failed to show a disparity between his qualifications and those of McCurdy sufficient to prove pretext.  According to the Eleventh Circuit, "[d]isparities in qualifications must be of such weight that and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Porter,* 2011 WL 1990667, at *2 (internal marks omitted).  There simply is no evidence that the plaintiff's qualifications were such that no reasonable person could have chosen McCurdy over him for the position in the investigative division.  In fact, the evidence suggests that McCurdy was more qualified than the plaintiff despite the plaintiff's higher ranking, and the plaintiff has "failed to rebut or even address [McCurdy's] identified strengths in the other dimensions on which [the selection committee and Sheriff] relied." *Id.*  There likewise is no evidence that race played any role in the promotion decision.

The plaintiff nevertheless argues that no objective criteria were used in the selection process, resulting in arbitrary decision making and an increase in the potential for

---

[12] On April 5, 2003, McCurdy was promoted to corporal in the major crimes section, which is in the investigative division.  He remained in that position until he was promoted to sergeant on September 15, 2003. After he became a sergeant, McCurdy was assigned patrol supervisory duties, which he performed until he returned to the major crimes section on February 9, 2004.  He was the supervisor of the major crimes section until he was reassigned to the narcotics unit, which also is in the investigative division, on June 24, 2006.  At the time of his promotion to lieutenant, McCurdy was a sergeant in the narcotics unit.  By contrast, at the time he applied for the promotion, the plaintiff was a supervisor in the patrol division.  Moreover, the plaintiff had been assigned only to the narcotics unit of the investigative division and had not worked in that unit since 1997, when he was transferred to the patrol division.  Unlike McCurdy, the plaintiff had no supervisory experience in the investigative division.  Moreover, McCurdy had received a number of commendations based on outstanding performance.  He was twice recognized as supervisor of the year.  One such recognition occurred in 2009, prior to his promotion to major crimes lieutenant, and was based in part on his performance as a sergeant in the narcotics unit.  The other recognition occurred in 2008, while McCurdy was serving as a sergeant in the investigative division.  McCurdy also was recognized as officer and investigator of the year. The plaintiff was recognized as supervisor of the year in 2007 and served in the Honor Guard.

Case No.3:10cv171/MCR/EMT

discrimination. In support of his position, the plaintiff points to the fact that the selection committee's decision with respect to the position in the patrol division was based on composite rankings whereas its decision with respect to the position in the investigative division was based on experience. It is undisputed that the policy in place at the time the plaintiff applied for the promotions allowed the selection committee to exercise discretion in recommending one of the top five candidates for promotion.[13] As the Eleventh has observed, however, "subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions." *Id.* (internal marks omitted). And although the plaintiff has demonstrated that Laws and McCurdy were promoted for different reasons, he has not identified any inconsistencies in the reasons given for McCurdy's promotion. To the contrary, members of the selection committee testified uniformly that McCurdy was selected because of his supervisory experience in the investigative division. According to James Spencer, who was the captain over the investigations division responsible for the major crimes section, at the time the lieutenant position was filled, a new sergeant was coming in who had no supervisory experience in major crimes; as a result, Spencer was "in a desperate situation for a supervisor that had experience . . . in major crimes." He, along with the rest of the selection committee, considered McCurdy, who had been an investigator and supervisor in the major crimes section, to be the most qualified candidate. It should also be noted that, while the selection committee passed over the plaintiff in recommending McCurdy for the promotion, it also passed over another white male, Tony Musselwhite, who was ranked higher than the plaintiff. Spencer testified that Musselwhite was not selected because he, like the plaintiff, was lacking in supervisory experience in the major crimes section. At least two members of the selection committee also testified that, had the opening been in the patrol division,

---

[13] It should be noted that the subjectivity component of the promotional process resulted from an agreement between the union representing employees of the SRCSO and the SRCSO. As the Sheriff explained in his deposition, prior to entering into an agreement with the union, which presumably was a collective bargaining agreement, it was his practice to automatically promote the highest-ranking candidate on the promotional roster based solely on the candidate's ranking. It was the union that introduced the subjective element, insisting that the Sheriff be provided with the names of the five highest ranking candidates with no one automatically selected.

Case No.3:10cv171/MCR/EMT

as they originally thought, the plaintiff would have been promoted – because of his supervisory experience in that division.[14]  In short, there is no evidence that the Sheriff promoted McCurdy for any reason other than the legitimate non-discriminatory reasons he has articulated or that race played any role in the promotion decision.[15]  Because the plaintiff has failed to rebut the Sheriff's legitimate, nondiscriminatory reasons for failing to promote him, the Sheriff is entitled to summary judgment as a matter of law on the plaintiff's failure to promote claim.[16]  Accordingly, it is hereby ORDERED that defendant's motion for summary judgment (doc. 24) is **GRANTED**.  The Clerk of Court is directed to enter summary final judgment in favor of the defendant, consistent with this order, and tax

---

[14] Had Laws not refused a transfer to another district, his position as lieutenant in the patrol division would have been available and the plaintiff would have been promoted.  When Laws learned of his pending transfer, however, Laws requested to remain in his current position for morale reasons, which the Sheriff allowed.  In an affidavit submitted in response to the Sheriff's motion, the plaintiff states that he is not aware of any prior instance in which someone was allowed to refuse a transfer.  According to Robert Jeffrey Floyd, who was a member of the selection committee, however, the Sheriff would honor a request not to be transferred if there was a compelling basis upon which to do so, which the Sheriff apparently found in Law's case.

[15] It also should be noted that at least one of the members of the selection committee served on the panel that recommended the plaintiff for supervisor of the year in 2007 and Major Collier approved the request, along with the Sheriff and detention supervisor.

[16] The plaintiff also asks the court to consider the statistical or numerical makeup of the SRCSO and alleges that he was the only black law enforcement deputy at the SRCSO at the time of the 2008 and 2009 promotions.  While it is true that "[s]tatistical information concerning an employer's general policy and practice concerning minority employment may be relevant to a showing of pretext, even in a case alleging an individual instance of discrimination rather than a 'pattern and practice' of discrimination," *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir. 1983) (citing *McDonnell Douglas*, 411 U.S. at 805), the plaintiff has introduced no statistical information into the record for the court to consider.  The plaintiff further argues that evidence that Rena Smith, a black female, was passed over for a promotion to Jail Director in 2001 in favor of a white male undermines the Sheriff's legitimate nondiscriminatory reasons for failing to promote him.  Not only has the plaintiff asserted a failure-to-promote claim, rather than a disparate treatment claim, such that comparators do not enter into the analysis, but Smith clearly was not similarly situated to the plaintiff and any failure to promote her, without more, does not cast any doubt upon the legitimacy of the Sheriff's proffered reasons for his failure to promote the plaintiff.

Case No.3:10cv171/MCR/EMT

costs against the plaintiff.

**DONE AND ORDERED** this 9th day of September, 2011.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**